207 So.2d 711 (1968)
The STATE of Florida, Appellant,
v.
Talmadge A. BUCHANAN and David Shifrin, Appellees.
No. 67-259.
District Court of Appeal of Florida. Third District.
March 4, 1968.
Rehearing Denied March 22, 1968.
*712 Earl Faircloth, Atty. Gen., Arden M. Siegendorf, Asst. Atty. Gen., Richard E. Gerstein, State Atty., Joseph Durant, Asst. State Atty., and L.J. Cushman, Miami, for appellant.
Harry W. Prebish, Horton & Schwartz, Miami, for Buchanan.
Barry L. Garber, Miami, for Shifrin.
Before PEARSON, BARKDULL and HENDRY, JJ.
PEARSON, Judge.
The State of Florida is the appellant here. The appeal is from an order granting appellee, Talmadge A. Buchanan's motion to quash the information and supplemental motion in support of immunity, and appellee, David Shifrin's, motion to quash the information.[1] The motions were directed to a second information filed pursuant to an indictment returned by the Dade County Grand Jury. The trial judge, having heard the motions, entered an extensive order setting forth the circumstances under which the decision was made. The introductory portion of the order is as follows:
"THIS CAUSE came on to be heard before me on February 17, 1967, upon the defendant, TALMADGE A. BUCHANAN'S, `Motion to Quash' and `Supplemental Motion in Support of Defendant's Plea of Immunity,' and upon the defendant, DAVID SHIFRIN'S, `Motion to Quash.' This Court, having reviewed the file and exhibits in this cause, having heard the testimony offered in support of the motions, having read the transcripts of testimony given by the defendants before the Dade County Grand Jury, Spring Term, 1966, and having heard argument of counsel, finds:
An Information charging the defendants with `Conspiracy to Commit Bribery (Two Counts)' was filed in this Court by the State Attorney on January 4, 1967, the allegations in the Information having been based upon facts alleged in an Indictment presented on November 4, 1966, by the Spring Term, 1966, Grand Jury. More specifically, the defendants were charged between January 1, 1963, and January 1, 1966, with conspiracy to violate a particular section of Chapter 838 of the Florida Statutes dealing with `Bribery,' to-wit: Section 838.06.

*713 "* * * It is this Court's opinion from a reading of the transcript comprising 30 pages of questions and answers, and having considered the allegations contained in the Information, the Bill of Particulars, List of Witnesses and all pleadings filed by the State, that the defendant, SHIFRIN, gave testimony or evidence relating to the transaction for which he is being prosecuted, and thus, is immune from prosecution in this case. See State [ex rel. Dolan] v. Kelly, Fla. 1954, 71 So.2d 887; State [ex rel. Barone] v. Petteway, 1935, 121 Fla. 822, 164 So. 872; State [ex rel. Reynolds] v. Newell, Fla. 1958, 102 So.2d 613; State [ex rel. Johnson] v. MacMillan, District Court of Appeal of Florida, [194 So.2d 627] Second District, January Term, 1967, Case No. 7462."
"The defendant [Buchanan] cites as authority for his position the recent case of Garrity v. New Jersey, United States Supreme Court, January 16, 1967, 35 L.W. 4135 [385 U.S. 493, 511, 87 S.Ct. 616, 636, 17 L.Ed.2d 562, 574].
"Garrity holds that a decision to waive one's right against self-incrimination is `infected' and cannot be sustained as voluntary where the basis for the decision to waive is a choice between losing one's means of livelihood or paying the penalty of self-incrimination. The language is clear:
`The choice given appellants (policemen) was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent.' Garrity v. New Jersey, supra, page 4136 [87 S.Ct. page 618].
`We think the confessions were infected by the coercion inherent in this scheme of questioning and cannot be sustained as voluntary under our prior decisions.' Garrity v. New Jersey, supra, page 4136 [87 S.Ct. page 618].
`We conclude that policemen * * * are not relegated to a watered-down version of constitutional rights.' Garrity v. New Jersey, supra, page 4137 [87 S.Ct. page 620].
"The reasoning in the Garrity case is brought in sharp focus in this case since it is to be noted the codefendant, SHIFRIN, not being a County Officeholder, first chose not to sign a waiver of immunity; then, after such refusal, he was advised by the Assistant State Attorney that he would gain immunity as a consequence of his testifying. Garrity stands for the proposition that a County Officeholder should be in no worse position than one who is not a County Officeholder as regards a waiver of a constitutional right. (This Court is in substantial agreement with the principles set forth in the dissenting opinion of Justice Harlan; however, it is of course, bound by the ruling of the majority).
* * * * * *
"The waiver of immunity, being involuntary, the subject matter of the inquiry being one of the crimes enumerated in 932.29, Florida Statutes, and the testimony of BUCHANAN constituting a link in the chain of evidence required to prosecute him for the offenses charged, the defendant, BUCHANAN, is immune from prosecution for these offenses charged."
The State has presented two points on appeal. The first urges that the trial court erroneously applied the decision of Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), in a retroactive manner by granting immunity to the appellee, Buchanan. The basic contention upon which the appellant's argument is founded is that the State had a right to rely upon the law as it existed at the time Buchanan appeared before the grand jury, and that the lower court invalidated a valid procedure by applying the Garrity rationale retroactively.
Appellant's second point is applicable to both appellees. It urges that the testimony *714 given by the appellees did not constitute a link in the chain of evidence needed to prosecute them for the crimes alleged in the information and that therefore the court erred in quashing the information.
The State, as appellant, argues under point one that Garrity v. State of New Jersey, supra, does not apply to the case at bar and supports this position by three lines of argument:
(1) Appellee Buchanan appeared as a witness before the Dade County Grand Jury three times. On each occasion before he testified, he was asked whether he understood the waiver of immunity tendered to him and whether he was willing, freely and voluntarily to sign it. Each time he assured the grand jury that he understood the nature and the effect of the waiver and was willing to sign it. He did so without protest, objection or even a hint of reluctance. Therefore appellee Buchanan, in effect, volunteered his testimony.
(2) At the time appellee Buchanan was arraigned, he plead "not guilty" to the information and although granted 20 days within which to file motions, he failed to do so within that time. His motions on December 29 were therefore too late and he had waived any right he might have had to claim immunity.
(3) The trial court erroneously applied the holding in Garrity v. State of New Jersey, supra, because the testimony was given prior to the publication of the decision in that case. Therefore to apply the decision is to apply it retroactively.
The State, in effect, is asking this Court to overrule the trial court upon a finding of fact by urging, as in "(1)" above, that appellee Buchanan, even though responding on each occasion to a subpoena from the grand jury, actually testified voluntarily. In his order of 24 February 1967, which is the order here appealed, the trial judge found:
"The State claims BUCHANAN waived immunity; BUCHANAN claims the waiver was involuntary in view of the provisions of Section 8.02 of the Charter of Metropolitan Dade County,[2] and the provisions of Section 2-51[3] and Section 2-55[4] of the Code of Metropolitan Dade County, Florida. These sections provide for forfeiture of office upon refusal to waive immunity. At the hearing on the defendant's `Supplemental Motion in Support of the Plea of Immunity,' the defendant testified that he was motivated *715 to sign the waiver by the provisions of the Charter; he did not want to forfeit his position by refusing to execute the waiver."
There is sufficient evidence in the record to support this finding by the trial judge. See Stanford v. State, Fla. 1959, 110 So.2d 1.
Appellant's argument set forth in "(2)" above, to the effect that appellee Buchanan did not timely file the motions to quash, is not supported by an objection in the proceedings before the trial court. Nevertheless, examination of the record reveals that the motions were timely filed after the filing of a second information. The order granting 20 days for the filing of motions was entered upon the first information. The second information was filed after the court had quashed count one of the first information. The second information was filed on January 4, 1967. On January 5 appellee Buchanan filed a motion to quash the information and on January 6 appellee Buchanan filed his supplemental motion to quash. The record thus reveals that both motions were timely filed.
The State makes its main thrust under "(3)" above where it urges that the decision of the Supreme Court of the United States in Garrity v. State of New Jersey, supra, was, but should not have been, retroactively applied. We are here dealing with a fundamental constitutional right of one not to incriminate himself. The import of the Garrity decision is that a public officeholder may not be required to incriminate himself in order to escape sanctions imposed by public law.
The Supreme Court, in the Garrity opinion, discussed a waiver which was signed under similar circumstances to the waiver in the instant case and concluded,
"The choice given appellants was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent. That practice, like interrogation practices we reviewed in Miranda v. State of Arizona, 384 U.S. 436, 464-465, 86 S.Ct. 1602, 1623, 16 L.Ed.2d 694, 718, 10 A.L.R. 3d 974, is `likely to exert such pressure upon the individual as to disable him from making a free and rational choice.' We think the statements were infected by the coercion inherent in this scheme of questioning and cannot be sustained as voluntary under our prior decisions." 17 L.Ed.2d at 565, 87 S.Ct. at 618 [Emphasis supplied.]
Since the decision merely applied established law to a new situation, we do not think that it can successfully be argued that the application was a retroactive application. Further, the application of the holding in Garrity to the present situation was not a retroactive application for the reason that the case at bar was pending and had not gone to trial at the time of the rendition of the decision in Garrity by the Supreme Court of the United States. See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).
Assuming that the decision in Garrity was one overruling a prior decision, its retroactive application to the facts in the case at bar was entirely proper and within the discretion of the trial judge, since the overruling court did not indicate by its opinion that the rule contained therein should not be retroactively applied. Cf., Rassano v. Immigration and Naturalization Service, 377 F.2d 971, 975 (7th Cir.1967).
It is our holding that the order of the lower court was not a per se retroactive application of Garrity, but was instead, the application of current law to a contention properly asserted in the lower court proceedings. We find no authority to support the appellant's contention that the procedure *716 utilized by the State was proper prior to the Garrity decision. The decision did not overrule or modify prior decisions on the subject, but instead, adhered to a long line of decisions which vitiate confessions obtained under duress and coercive conditions.
We turn now to consideration of the appellant, State of Florida's, second point on appeal. This point was directed to both appellees, Buchanan and Shifrin. It urges that in each instance the trial judge should not have quashed the information because the evidence given by the respective appellees was not a link in the chain of evidence whereby the State sought to convict the appellees. The difficulty here seems to lie in the different definitions of the "link in the chain of evidence." It is the contention of the State that the answer of a witness before the grand jury must be such as would either constitute or reveal evidence against him of the crime charged. The contention of the appellees is that it is only necessary for the matter about which inquiry is made to be relevant to the charge that is brought in the information.
An examination of the record reveals that each of the appellees was examined extensively on the subjects upon which the informations were based. The bill of particulars filed pursuant to court order set forth the names of Roy O'Nan, Manson Hill, Fred Chapman, Reuben Freedman and John Romano. The appellees were asked about their relationships with all of these persons. Therefore, there is no question but that the subject matter out of which the informations were molded was the subject of the examinations of the appellees.
The appellee, Buchanan, disclaimed knowledge of the persons and the matters which were the subjects of the questions before the grand jury. The State contends that because of his failure to respond affirmatively the appellee, Buchanan, was not entitled to the immunity he would have received if he had answered affirmatively. It is urged that unless the interrogation reveals substantial leads, no immunity is forthcoming from the examination. We do not find authority for the State's position, and indeed, the State does not cite any.
The purpose of the immunity statute is to aid the prosecution in securing evidence despite the protection afforded defendant against self incrimination and should be liberally construed to accomplish that purpose. State ex rel. Byer v. Willard, Fla. 1951, 54 So.2d 179. In defining the breadth of the constitutional guarantee the United States Supreme Court, in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 653 (1964), stated:
"The privilege afforded not only extends to answers that would in themselves support a conviction * * * but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute." 84 S.Ct. at 1495, 12 L.Ed.2d at 661.
What constitutes a link in the chain of evidence, sufficient to entitle one to immunity afforded by § 932.29 Fla. Stat. F.S.A., was set forth in State ex rel. Reynolds v. Newell, Fla. 1958, 102 So.2d 613,
"Any incriminating fact or circumstance that will contribute weight to other facts or circumstances from which guilt may be inferred is sufficient to constitute a link in the chain * * * but the one charged cannot be compelled to furnish any of them if they directly or indirectly incriminate him."
See also Florida East Coast Railway Company v. Rouse, Fla. 1966, 194 So.2d 260.
It should be pointed out that appellee Shifrin is not a County official and therefore was not concerned in the question of coerced waiver of immunity. In his case no waiver of immunity was executed and the sole question on this appeal as pertains to him is whether the testimony that he gave before the grand jury constituted a link in the evidence so that he could not be *717 prosecuted under the terms of § 932.29 Fla. Stat. F.S.A. which provides in part as follows:
"* * * no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise * * *."
After consideration of the nature of the grand jury proceedings, the character of the testimony sought, the charges filed against the appellants, and other elements presented in the record, we conclude that the testimony of the appellees constituted a link in the chain of evidence necessary to prosecute for the offense charged. The provisions of § 932.29 Fla. Stat. F.S.A. are applicable to the instant appeal, and therefore, the appellees are immune from prosecution for the offense charged.
Having reviewed the record in the light of the points presented in the appellant's brief, and having reached the determination that error has not been demonstrated, the order appealed is affirmed.
Affirmed.
BARKDULL, Judge (specially concurring).
I concur with the opinion authored by Judge PEARSON as to the appellee, David Shifrin.
As to the appellee, Talmadge A. Buchanan, he was an elected public officer of the State of Florida at the time he was subpoenaed to testify before the grand jury. As such, he was subject to removal from office only by the Chief Executive of this State. Art. IV, § 15, Constitution of the State of Florida, F.S.A. Therefore, the provisions of § 2-51, Code of Metropolitan Dade County,[1] providing for the forfeiture of office by an employee for failure to waive immunity before a grand jury, would not be applicable to such a public official. However, in addition to providing for forfeiture of office, § 2-55, Code of Metropolitan Dade County,[2] provides certain penalties for failure to execute such an immunity, among which is uncarceration in the county jail. And it appears that this threat of incarceration, if convicted of violating this provision of the Code of Metropolitan Dade County, to wit: failure to execute the waiver of immunity, would constitute sufficient coercion to fall under the principles outlined by the United States Supreme Court in Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562.
Therefore, I am for affirmance of the action of the trial court, but as to the appellee Buchanan for the views outlined above.
HENDRY, J., concurs in the opinion and Judge BARKDULL's special concurring opinion.
NOTES
[1] See Section 924.07(1) Fla. Stat. (1965), F.S.A. for authority of State to appeal.
[2] "Any county or municipal officeholder or employee who, upon being called before a grand jury to testify concerning the conduct of his office or the performance of his official duties or employment, refuses to sign a waiver of immunity against subsequent criminal prosecution, or to answer any relevant question concerning such matters before the grand jury, shall be removed from office or public employment by the appropriate authority, or upon suit by the State Attorney of this county".
[3] "If any person in the county service shall wilfully refuse or fail to appear before any court or judge, any legislative committee or any officer, board or body authorized by law to conduct any hearing or inquiry, or having appeared shall refuse to testify or answer any question relating thereto on the ground that his testimony or answer would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any matter about which he may be asked to testify at any such hearing or inquiry, or if any such person shall refuse to answer any questions concerning the particular branch of the county service in which such person is employed, which may be asked him by the head of his department or by any other person authorized by the county commissioner or by another elected official, as the case may be, to ask any such question, he shall forfeit his office or position and shall not be eligible thereafter for appointment to any position in the county service. (Ch. 30255, § 17, Laws 1955)
[4] "Any person who wilfully violates any provision of this division shall be guilty of an offense, triable in the metropolitan court, and shall upon conviction be punished by a fine of not to exceed one thousand dollars, or by imprisonment in the county jail not to exceed twelve months, or both. [Ch. 30255, § 23, Laws 1955; Ord. No. 57-16, § 1, 10-7-57)."
[1] § 2-51, Code of Metropolitan Dade County, reads in part as follows:

"If any person in the county service shall wilfully refuse * * * to waive immunity from prosecution on account of any matter about which he may be asked to testify * * * he shall forfeit his office or position and shall not be eligible thereafter for appointment to any position in the county service."
§ 2-39. Definitions.
"(c) `County service' shall mean employment, payment for which is made in whole or in part by the county commission or by other elected officials of the county whose employees are affected by this division."
[2] "§ 2-55. Penalty for violations. Any person who wilfully violates any provision of this division shall be guilty of an offense, triable in the metropolitan court, and shall upon conviction be punished by a fine of not to exceed one thousand dollars, or by imprisonment in the county jail not to exceed twelve months, or both."